cash surrender value of the insurance policies are overruled, and the trustee's objection is sustained.

In re Misty S. DEGROSS, Debtor.

No. 01–2412–3F7.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Oct. 22, 2001.

Peter D. Black, Jacksonville, FL, for Debtor.

Elena L. Escamilla, Orlando, FL, United States Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This case came before the Court upon the United States Trustee's Motion to Dismiss pursuant to 11 U.S.C. § 707(b). The Court conducted a hearing on August 2, 2001. The Court instructed the parties to submit briefs in lieu of oral argument. Upon the evidence and the arguments of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Debtor filed a Chapter 7 bankruptcy petition on March 20, 2001. (Doc. 1.) On May 14, 2001 the Chapter 7 Trustee filed a report of no distribution. (Doc. 9.) On June 25, 2001 the United States Trustee (the "Trustee") filed its Motion to Dismiss. (Doc. 10.)

On her schedules Debtor lists unsecured non-priority debt of $62,622.00, $632.00 of which represents medical bills, and the remainder of which represents credit card debt. Debtor lists one secured claim in the amount of $7,921.00 which represents her automobile, a 1995 Nissan Pathfinder.

Debtor's income at the time of the filing of the petition was approximately $63,400.00. Her monthly income exceeded her monthly expenses by $114.00. Subsequent to the filing of the petition, Debtor changed employers. Her current salary is approximately $62,000.00 annually. (Tr. at 11.)

Debtor's monthly housing expenses of $1,544.00 consist of the following: $1,100.00 for rent, $150.00 for utilities, $50.00 for water and sewer, $50.00 for telephone, $29.00 for alarm security, $65.00 for cable, and $100.00 for home maintenance. Debtor has a roommate who does not pay rent or contribute to any of the household expenses such as food or utilities. Debtor testified that her roommate is unable to contribute financially because of a back injury.

Debtor's monthly expense for food, clothing, and miscellaneous expenditures is $1,155.00 which includes $400.00 for food, $100.00 for clothing, $50.00 for dry cleaning, $75.00 for medical and dental expenses, $150.00 for recreation, $30.00 for charitable contributions, $150.00 for regular business expenses, and $200.00 for miscellaneous emergency expenses.

Debtor's monthly transportation expense of $642.00 consists of a car payment of $380.00, insurance of $102.00, and $160.00 for gas, oil changes, vehicle registration fee, and repairs.

Debtor's Schedule I indicates her former employer withheld $252.00 monthly from her salary for health insurance. However, Debtor's pay-stub for the pay period beginning on May 31, 2001 and ending on June 15, 2001 indicates her former employer withheld $79.19 for that pay period or

$158.38 monthly. (Tr. Ex. 11.)[1] Debtor also spends an additional $155.00 monthly for health insurance, $25.00 monthly for life insurance, and $95.00 monthly for short term and long term disability. Debtor testified she has arrhythmia, a heart condition, which periodically requires her to seek medical attention. Debtor testified that she maintains health insurance beyond that provided by her employer to ensure uninterrupted coverage because of frequent changes in ownership and health benefits in the nursing home industry. (Tr. At 17.)

Debtor testified that she filed for bankruptcy relief to obtain a fresh start and to discharge her debts in order to purchase a home. She testified that she incurred the credit card debt approximately ten years ago and has not made a payment in five years. She also testified that, with the exception of two credit card companies, none of her creditors has attempted to collect its debt within the last six years. Finally, the only debt debtor has incurred during the last five years is the purchase of her vehicle.

### CONCLUSIONS OF LAW

■ The Trustee seeks dismissal of Debtor's petition on the basis that granting the relief Debtor seeks would be a substantial abuse of the provisions of Chapter 7. 11 U.S.C. § 707(b) provides that a court may dismiss a Chapter 7 case filed by an individual debtor whose debts are primarily consumer debts if the granting of relief would be a substantial abuse of the provisions of Chapter 7. There is a presumption in favor of granting relief to the debtor. A court must first determine whether the debts are primarily consumer debts as defined by 11 U.S.C. § 108. Debtor concedes that her debts are primarily consumer debts. The Court must therefore determine whether granting relief would constitute a substantial abuse of the provisions of Chapter 7.

### Substantial Abuse

■ Because Congress did not define substantial abuse, courts have been forced to grapple with its definition. It is clear that a debtor's ability to pay is always a factor in a court's substantial abuse determination. A debtor's ability to pay is measured by what [she] could pay in a hypothetical Chapter 13 case. *Stuart v. Koch,* 109 F.3d 1285, 1288 (8th Cir.1997). What varies among courts is the extent to which they rely on a debtor's ability to pay. Several circuit courts have held that a debtor's ability to pay, standing alone, is sufficient to warrant dismissal on substantial abuse grounds. *In re Walton,* 866 F.2d 981, 984–985 (8th Cir.1989); *Zolg v. Kelly (In re Kelly),* 841 F.2d 908, 915 (9th Cir.1988).

Other Circuit courts have adopted an approach which considers a Debtor's ability to pay along with other circumstances, the circumstances varying from court to court. *See Kornfield v. Schwartz (In re Kornfield),* 164 F.3d 778, 783–784 (2d Cir. 1999) (affirming dismissal on substantial abuse grounds based on ability to pay followed by analysis of the totality of the circumstances to determine presence of aggravating or mitigating factors); *Stewart v. United States Trustee (In re Stewart),* 175 F.3d 796, 809 (10th Cir.1999) (ability to pay primary factor but other mitigating "unique hardship" and aggravating factors must be considered); *First*

---

1. Debtor testified that her current employer offers health insurance ninety days from the date of employment. The Trustee elicited no testimony as to the cost of such coverage. For purposes of the Motion to Dismiss the Court will utilize $158.38 as the cost of that coverage.

*USA v. Lamanna (In re Lamanna)*, 153 F.3d 1, 2 (1st Cir.1998) (adopting totality of the circumstances test set forth in *Krohn* and noting that ability to pay is primary but not conclusive factor of substantial abuse); *Green v. Staples (In re Green)*, 934 F.2d 568, 572 (4th Cir.1991) (refusing to adopt a per se rule that ability to pay constitutes substantial abuse but considering ability to pay within its totality of the circumstances analysis); *In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989) (focusing on a debtor's honesty and neediness).

Only the Fourth and Sixth Circuits set forth the specific factors courts should analyze when conducting a totality of the circumstances analysis. The Fourth Circuit sets forth the following factors: 1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment; 2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay; 3) Whether the debtor's proposed family budget is excessive or unreasonable; 4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the debtor's true financial condition; and 5) Whether the petition was filed in good faith. *In re Green*, 934 F.2d at 572.

The Sixth Circuit focuses on a Debtor's honesty and neediness. The honesty inquiry includes the following non-exclusive factors: the debtor's good faith and candor in filing schedules and other documents, whether the debtor has engaged in "eve of bankruptcy" purchases, and whether Debtor was forced into bankruptcy by unforeseen or catastrophic events. *Krohn*, 886 F.2d at 126. The neediness inquiry includes a consideration of the debtor's ability to pay as well as the stability of the debtor's future income, the debtor's Chapter 13 eligibility, the existence of state remedies to ease the debtor's financial predicament, the relief obtainable through private negotiations, and whether the debtor's expenses can be reduced without depriving him of the basic necessities of life. *Id.* at 126–127.

### Adoption of a standard

 The Court holds that the ability to pay is the primary but not conclusive factor in determining whether there is a substantial abuse of Chapter 7. The Court rejects the contention that ability to pay, standing alone, is sufficient to warrant dismissal. The Court believes that the better reasoned analysis is one which considers a debtor's ability to pay along with other circumstances. The Court therefore adopts a totality of the circumstances test similar to those set forth in *Green* and *Krohn*. If a debtor has the ability to pay something, either because the debtor's income exceeds his expenses or because the debtor's expenses are excessive, the Court will look to the following factors to determine whether they militate against or in favor of dismissal: 1) whether unforeseen or catastrophic events such as sudden illness, disability, or unemployment propelled the debtor into bankruptcy; 2) whether the debtor's standard of living has substantially improved as a result of the bankruptcy filing or essentially remained the same; 3) the debtor's age, health, dependents, and other family responsibilities; 4) the debtor's eligibility for Chapter 13 relief and whether creditors would receive a meaningful distribution in a Chapter 13 case; 5) the age of the debts for which the debtor seeks a discharge and the period over which they were incurred; 6) whether the debtor incurred cash advances and made consumer purchases far in excess of the ability to repay; 7) whether the debtor made any payments toward the debts or attempted to negotiate with her creditors; 8) the accuracy of the debtor's schedules

and statement of current income and expenses; and 9) whether the debtor filed the petition in good faith. Finally, the Court notes that it defines substantial abuse as that which shocks the conscience of the Court.

### Application of the standard to the instant case

**I. Does Debtor have the ability to pay? Is Debtor's budget excessive or unreasonable?**

■ Initially the Court notes that at the time of the filing of the petition Debtor's monthly income exceeded her expenses by $114.00. Debtor subsequently changed employers, which resulted in a salary decrease, leaving her with no disposable income. Based on Debtor's schedules and her testimony that she recently changed jobs and received a pay decrease, Debtor does not have the ability to fund a Chapter 13 plan. However, the Trustee suggests that Debtor's expenses are excessive and could be substantially reduced. The Trustee urges the Court to adopt the Internal Revenue Service Collection Financial Standards (the "Collection Standards") as a yardstick by which to measure the reasonableness of Debtor's living expenses.[2] The Court declines to adopt wholesale the Collection Financial Standards. The Court will independently examine Debtor's expenses to determine whether they are excessive.

### Housing Expenses

■ The Trustee takes vigorous exception to Debtor's monthly housing expenses of $1,544.00. The Trustee contends that Debtor's "support" of an unrelated roommate is not related to Debtor's maintenance and support and that one half of the

household expenses should be attributed to Debtor's roommate.

On one hand, the Trustee concedes that the Court cannot force Debtor to obtain a roommate. On the other hand, the Trustee urges the Court to attribute half of Debtor's housing expenses to her roommate, creating an additional $772.00 monthly with which Debtor could fund a Chapter 13 plan. Implicit in the Trustee's argument is the assumption that Debtor's housing arrangements are tailored to accommodate a roommate. However, Debtor testified she has lived in the same house approximately three years but has had a roommate only during the last year. Attributing half of Debtor's living expenses to her roommate would be tantamount to compelling Debtor to obtain a roommate. With the exception of Debtor's electricity and water and sewer expenses, Debtor's living expenses are the same whether she has a roommate or not. The Court declines to attribute any of Debtor's living expenses to her roommate.

■ Other than offering the Collection Standards, which set forth $809.00 as the maximum amount allowable for housing and utilities for a family of two or less, the Trustee did not offer any evidence that Debtor could obtain less expensive housing. The Collection Standards provide a county-wide average and do not necessarily reflect the costs of housing where Debtor lives. The Court concludes that Debtor's housing expenses of $1,544.00 are reasonable.

### Transportation Expenses

The Trustee asserts that the Collection Standards entitle Debtor to a maximum transportation allowance of $283.00, leaving $359.00, the difference between Debt-

---

**2.** The Collection Financial Standards are utilized by the Internal Revenue Service to determine a taxpayer's ability to pay a delinquent tax liability.

or's actual transportation costs of $642.00 and the maximum allowance of $283.00, to be paid to unsecured creditors. The Court declines to adopt the Collection Standards Transportation allowance.[3] The Court finds that Debtor's transportation expenses are not excessive.

### Insurance Expenses

■ Although Debtor's approximate $433.00 monthly insurance expense is seemingly high, the Court does not find it an unnecessary expense. The $155.00 expense for the additional health insurance policy is warranted in light of changes in Debtor's employment and coverage as well as Debtor's heart condition. Additionally, the Court does not take exception to Debtor's procurement of an accidental short term and long term disability policy.

### Food, Clothing, and Miscellaneous Expenses

■ Other than pointing out that the $75.00 medical and dental expense is not a recurring charge, the Trustee's chief objection to Debtor's food, clothing, and miscellaneous expenses is that they are excessive, presumably because they exceed the $773.00 Collection Standards maximum allowance. Debtor testified she sought emergency room treatment twice during the last year because of a heart condition and was required to pay $75.00 for each visit. Additionally, Debtor points out that she is responsible for co-payments, deductibles, over the counter medications, and dental expenses. Debtor indicates in her brief that the $150.00 monthly business expense is for continuing education courses to maintain her employment certi-

fication. Debtor attributes her $200.00 monthly miscellaneous emergency expense to expenses such as travel expenses to attend an out of state funeral and locksmith charges when she locked her keys in her car, two events which occurred in the month before Debtor filed her petition. Finally, Debtor points out that her $150.00 monthly recreation expense encompasses clubs and entertainment, newspapers and magazines, and her annual vacation. Debtor's food, clothing, and miscellaneous expenses are at the high end of reasonable. The Court declines to make any specific adjustments, but recognizes that adjustments could be made. Because any such adjustments would result in Debtor's ability to pay something into a Chapter 13 plan, the Court finds it necessary to determine whether the remaining factors militate against dismissal.

## II. Mitigating Factors

### Precipitating factors

Although Debtor did not file her petition because of a sudden illness, disability, or unemployment, Debtor indicated that her heart arrhythmia contributed to her decision to file.

### Debtor's standard of living

This is not a case of creditors aggressively pursuing a debtor by garnishing her wages in an attempt to obtain repayment or a case of a debtor looking to create a better lifestyle by discharging her debt. Debtor testified that, with the exception of two credit card companies, none of her creditors has attempted to collect its debt

---

**3.** Even if it did, however, Debtor's actual transportation costs exceed the standards by $28.00, not $359.00. The transportation standards consist of 1) ownership costs, which are nationwide figures for monthly loan payments and 2) regional operating costs. The allowable ownership cost is the lesser of $407.00 or

the debtor's monthly loan payment. Because Debtor's monthly loan payment is $379.00, her allowable ownership cost would be $379.00. The operating cost for an individual with one vehicle is $235.00. Accordingly, Debtor's maximum transportation allowance would be $614.00, not $283.00.

within the last six years. Additionally Debtor has not made any payments during the last five years. The Court finds that Debtor's bankruptcy filing will not improve her standard of living.

### Debtor's age, health, dependents, and family responsibilities

As the Court previously noted, Debtor has heart arrhythmia. Debtor is 36 years of age and does not have any dependents or family responsibilities.

### Eligibility for Chapter 13 relief and meaningfulness of any distribution in Chapter 13 Case

 Although Debtor is eligible for Chapter 13 relief, her creditors would not receive a meaningful distribution in a Chapter 13 case. Even if the Court had adjusted some of Debtor's expenses here and there, "[t]he fact that a debtor may ultimately have a few hundred dollars per month in surplus funds does not support the argument that [she] can successfully and adequately fund a chapter 13 plan to repay all or substantially all of [her] debts." *In re Farrell,* 150 B.R. 116, 119 n. 3 (Bankr.D.N.J.1992). The Court is unwilling to engraft a no disposable income threshold to Chapter 7 eligibility. *See In re Attanasio,* 218 B.R. 180, 196 (Bankr. N.D.Ala.1998).

### Age of debts and the period over which they were incurred

Debtor testified that she accumulated the debts over a ten-year period dating back to the early nineties. Debtor also testified that the only debt she has incurred during the last five years is the purchase of her vehicle. Other than penalties and interest, Debtor's credit card debt was incurred between five and ten years ago and certainly does not represent eve of bankruptcy purchases.

### Whether Debtor incurred cash advances and made consumer purchases far in excess of her ability to repay

Debtor testified that her credit card debt, not including penalties and interest, was approximately $30,000.00. She testified her salary when she incurred the debt was $34,000.00. The Court does not find that Debtor incurred cash advances and made consumer purchases far in excess of her ability to repay.

### Whether Debtor made any payments toward the debt and the availability of relief through private negotiation

Debtor testified that she initially made payments toward her debt but stopped because the interest accrual exceeded the payments. Additionally, Debtor testified she attempted to negotiate with her creditors but was unsuccessful.

### Accuracy of Debtor's schedules and Debtor's good faith

The Court finds that Debtor's Schedules and statement of current income and expenses reasonably and accurately reflect her true financial condition.

It is clear that Debtor filed her petition in good faith. Debtor testified that she filed bankruptcy to obtain a fresh start and to purchase a house. The Court was impressed with Debtor's credibility and was presented with no evidence to suggest that Debtor did not file her petition in good faith.

### CONCLUSION

Although Debtor could likely pay something into a Chapter 13 plan, in light of the fact that: 1) A discharge of Debtor's debts will not substantially improve her standard of living, 2) Debtor has a chronic heart condition, 3) Debtor's creditors would not receive a meaningful distribution in a Chapter 13 case, 4) Debtor's debts were incurred between five and ten years ago,

5) Debtor made substantial payments on the debt, 6) Debtor's schedules and statement of income and expenses were accurate, and 7) Debtor filed her petition in good faith, the Court concludes that granting the relief Debtor seeks would not be a substantial abuse of the provisions of Chapter 7. Accordingly the Court will deny the Trustee's Motion to Dismiss. The Court will enter a separate Order consistent with these Findings of Fact and Conclusions of Law.