## In re Randall A. BROWN and Lorraine Nester Brown, Debtors.

### No. 03–1551–3F7.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Nov. 19, 2003.

Armistead W. Ellis, Jr., Daytona Beach, FL, for Debtors.

Miriam G. Suarez, Orlando, FL, United States Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This case came before the Court upon the United States Trustee's Motion to Dismiss pursuant to 11 U.S.C. § 707(b). The Court conducted a hearing on September 4, 2003. In lieu of oral argument, the Court instructed the parties to submit memoranda of law. Despite the instruction, Debtors' attorney failed to submit a brief. Upon the evidence and the argument of the United States Trustee, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Debtors filed a Chapter 7 bankruptcy petition on February 19, 2003. (Doc. 1.) On their schedules Debtors list credit card debt of $67,957.37. Randall Brown testi-fied that the credit card obligations are the result of consumer purchases. (Tr. at 13.)

Randall Brown has been employed by the YMCA for 27 years and is president of the Greater Daytona Beach Area YMCAs. Randall Brown's gross monthly income is $8,943.00.[1] Randall Brown's employer deducts the following amounts monthly from his salary: 1) $2,248.00 for federal income tax, social security, and medicare; 2) $286.00 for various insurance policies;[2] and 3) $87.00 for United Way Contributions. Randall Brown's net monthly income is $6,322.00.

Lorraine Brown is a project assistant for a property management company where she has been employed for eleven years. Lorraine Brown's gross monthly income is $3,308.00.[3] Lorraine Brown's employer deducts the following amounts monthly from her salary: 1) 722.00 for federal income tax, social security, and medicare; 2) 74.00 for insurance; and 3) 165.00 for a 401(k) contribution. Lorraine Brown's net monthly income is $2,512.00.[4] Debtors' combined net monthly income is $8,834.00.

---

1. The Court obtained this calculation by multiplying Randall Brown's biweekly salary of $4,127.33 (as reflected on his pay stubs, Trustee's Ex. 2) by 26 pay periods and dividing that figure by 12. Debtors' Schedule I incorrectly lists Randall Brown's gross monthly income as $7,780.00.

2. Debtors' Schedule I indicates that Randall Brown's employer withholds approximately $629.00 monthly for insurance. A review of Randall Brown's pay-stubs indicates that his employer withholds $286.00 monthly for insurance. The difference between the two figures is comprised of homeowner's insurance, life insurance, and automobile insurance which Randall Brown pays directly. Randall Brown included the insurance which he pays directly as both a payroll deduction on Schedule I and an expense on Schedule J.

3. The Trustee introduced an earnings statement which reflects that Lorraine Brown's gross salary during the first four months of the year was $16,480.00. The Trustee asserts that Lorraine Brown's gross monthly salary is $4,120.00 ($16,480.00 divided by 4). However, Lorraine Brown testified that the earnings statement reflects bonuses which she has received during 2003 as a result of her employer's transition to a different computer software program. Lorraine Brown testified that the bonuses will terminate soon and no later than the end of the year. Accordingly, the Court relied on the figures provided on Schedule I.

4. Because a voluntary contribution to a 401(k) plan is an unnecessary expense, the Court did not reduce Lorraine Brown's gross monthly income by her $165.00 monthly 401(k) contribution when it calculated her net monthly income.

Debtors are separated and in the process of divorcing. Randall Brown lives in Ormond Beach, Florida. Lorraine Brown lives in Texas. Debtors filed separate Schedules J. Randall Brown listed monthly expenses on Schedule J of $6,014.00. At the hearing on the Trustee's Motion to Dismiss Randall Brown submitted an "expense summary" depicting total monthly expenses of $6,441.00. Randall Brown testified that Debtors' federal income tax liability will increase approximately $2,800.00 as a result of their impending divorce.

Randall Brown's expense summary includes the following expenses: A $250.00 monthly telephone bill; a $137.00 monthly cable television bill; a $615.00 monthly food expense (a $90.00 increase from Schedule J); a $300.00 monthly automobile insurance premium of which $74.00 is attributable to Debtors' non-dependent daughter (Tr. at 64.); a $175.00 monthly entertainment expense; a $200.00 monthly vacation allowance; and a $128.00 monthly charitable contribution.

Randall Brown testified that his telephone bill, which is comprised mainly of long distance charges, is the result of talking to family and friends who live on the West Coast. Randall Brown testified that he has relied on his family and friends for solace during his divorce. He also testified that his cable bill is high because he rents a lot of movies.

Lorraine Brown listed monthly expenses on Schedule J of $2,314.00. Although she listed her monthly telephone bill as $250.00, Lorraine Brown testified that her monthly telephone bill is $90.00 to $100.00. (Tr. at 82.). Debtors list total monthly expenses of $8,755.00.

Randall Brown testified that he first met with his attorney to discuss the possibility of filing bankruptcy in November or December of 2002. (Tr. at 15.) At that time Randall Brown owned a 1991 Corvette on which he owed approximately $8,000.00 Shortly thereafter, he purchased a 1999 Corvette with a purchase price in excess of $30,000.00. Randall Brown testified that he intends to reaffirm the debt on the Corvette. His monthly payment is $581.33. (Tr. at 26, Schedule J.) Randall Brown testified that he purchased another vehicle because his prior vehicle was constantly in the shop. (Tr. at 40.) Randall Brown testified that although he considered less expensive alternatives, he ultimately opted for the Corvette because he felt that it would better retain its value for the extended time during which he would not have any credit as a result of the bankruptcy filing. (Tr. at 41.) [5]

Randall Brown is 51 years old and in good health. Lorraine Brown suffers from polycystic kidney disease and depression. Neither debtor has any dependents or family responsibilities.

### CONCLUSIONS OF LAW

■ The Trustee seeks dismissal of Debtors' petition on the basis that granting the relief Debtors seek would be a substantial abuse of the provisions of Chapter 7. Section 707(b) of the Bankruptcy Code provides that a court may dismiss a Chapter 7 case filed by an individual debtor whose debts are primarily consumer debts if the granting of relief would be a substantial abuse of the provisions of Chapter 7. There is a presumption in favor of granting relief to the debtor.

---

**5.** Apparently, the upkeep on the 1999 Corvette is costly. Randall Brown testified that he has had the back end replaced, the back and front brakes replaced, and the mufflers repaired. "It's a used car—it's almost five years old—and so I'm having to do a lot of those things to get it where it needs to be." (Tr. at 39.)

A court must preliminarily determine whether a debtor's debts are primarily consumer debts. Section § 101(8) of the Bankruptcy Code defines consumer debts as those "which are incurred primarily for a personal, family, or household purpose." It is clear from a review of Debtors' schedules and Randall Brown's testimony that Debtors' debts are primarily consumer debts. The Court must therefore determine whether granting relief would be a substantial abuse of the provisions of Chapter 7.

 A debtor's ability to pay as measured by what he could pay in a hypothetical Chapter 13 case is the primary but not conclusive factor in determining whether there is a substantial abuse of Chapter 7. *In re Degross,* 272 B.R. 309, 312–313 (Bankr.M.D.Fla.2001). If a debtor has the ability to pay something into a Chapter 13 plan, either because the debtor's income exceeds his expenses or because the debtor's expenses are excessive, the Court looks to the following factors to determine whether they militate against or in favor of dismissal: 1) whether unforeseen or catastrophic events such as sudden illness, disability, or unemployment propelled the debtor into bankruptcy; 2) whether the debtor's standard of living has substantially improved as a result of the bankruptcy filing or essentially remained the same; 3) the debtor's age, health, dependents, and other family responsibilities; 4) the debtor's eligibility for Chapter 13 relief and whether creditors would receive a meaningful distribution in a Chapter 13 case; 5) the age of the debts for which the debtor seeks a discharge and the period over which they were incurred; 6) whether the debtor incurred cash advances and made consumer purchases far in excess of the ability to repay; 7) whether the debtor made any payments toward the debts or attempted to negotiate with creditors; 8) the accuracy of the debtor's schedules; and 9) whether the debtor filed the petition in good faith. *Id.* at 313–314.

### Application of the standard to the instant case

### Do Debtors have the ability to pay? Is Debtors' budget excessive or unreasonable?

 The Court turns first to Randall Brown's expense summary. The Court questions the credibility and sincerity of such a last minute revision. Nonetheless, for purposes of the Trustee's Motion, the Court will accept the expense summary as representing Randall Brown's monthly expenses. However, the Court finds that a number of those expenses are clearly excessive and should be reduced. Randall Brown's monthly telephone bill of $250.00 is unreasonable. The Court recognizes that Randall Brown's marital difficulties have taken an emotional toll and that he finds comfort in talking to his friends and family who live on the West Coast. However, the Court's empathy has its limits. The Court is aware of much lower priced long distance services. The Court finds that a reasonable monthly telephone bill is $70.00. The Court finds Randall Brown's $137.00 monthly cable bill to be excessive. The Court finds that a reasonable monthly cable bill is $70.00. The Court finds that Randall Brown's monthly food expense of $615.00 is patently excessive and that a reasonable monthly food expense for Randall Brown is $400.00. The Court finds Randall Brown's monthly entertainment expense of $175.00 to be excessive and finds $100.00 to be a reasonable monthly entertainment expense. Randall Brown's $300.00 monthly automobile insurance premium includes $74.00 for insurance on a car which his 24 year old nondependent daughter drives. The Court finds this to be an unnecessary expense.

The Court finds a $200.00 monthly vacation expense to be excessive and finds $100.00 monthly to be reasonable. Finally, the Court notes that because $87.00 of Randall Brown's $128.00 charitable contribution expense is withheld directly from his paycheck, the Court already reduced Randall Brown's gross income by that amount when it calculated his net monthly income. Reducing Randall Brown's expense summary by unnecessary, excessive, and duplicative expenses, the Court finds Randall Brown's reasonable monthly expenses to be $5,689.00. Randall Brown's net monthly income exceeds his reasonable monthly expenses by $633.00.

█ Lorraine Brown testified that her monthly telephone expense is $90.00–$100.00 rather than the $250.00 reported on her Schedule J. As with Randall Brown, the Court finds that, given the proliferation of competitive phone packages, $70.00 is a reasonable monthly telephone expense. Reducing Lorraine Brown's Schedule J by the excessive telephone bill, the Court finds Lorraine Brown's reasonable monthly expenses to be $2,134.00. Lorraine Brown's net monthly income exceeds her reasonable monthly expenses by $378.00. Debtors' combined net monthly income exceeds their combined reasonable monthly expenses by $1,011.00. Because it is clear that Debtors are able to pay something into a Chapter 13 plan, the Court finds it necessary to determine whether the remaining factors militate against dismissal.

### Precipitating Factors

Debtors were not propelled into bankruptcy by an unforeseen or catastrophic event such as sudden illness, disability, or unemployment. Debtors' bankruptcy was the result of living beyond their rather affluent means.

### Debtors' Standard of Living

The Court finds that a Chapter 7 discharge would improve Debtors' far better than average standard of living.

### Debtors' age, health, dependents, and family responsibilities

Randall Brown is 51 years old and in good health. Although Lorraine Brown suffers from polycystic kidney disease and depression, neither has affected her ability to work. Neither debtor has any dependents or family responsibilities.

### Eligibility for Chapter 13 Relief and Meaningfulness of a distribution in a Chapter 13 Case

Debtors are eligible for Chapter 13 relief. Although the Court has previously held that it is unwilling to engraft a no disposable income threshold to Chapter 7 eligibility, *Degross,* 272 B.R. at 316, it is clear that Debtors do not fall into that category. Assuming that they all file claims, Debtors' unsecured creditors would receive in excess of a 40% dividend in a 36 month Chapter 13 case, clearly a meaningful distribution.[6]

### Age of Debts and the Period over which they were incurred

Randall Brown testified that Debtors' credit card debt was incurred over time. There is no evidence that Debtors ever curtailed or reduced their spending in an effort to repay their creditors.

### Whether Debtors incurred cash advances and made consumer purchases far in excess of their ability to pay

The Court does not find that Debtors incurred cash advances and made consumer purchases far in excess of their ability to pay. The Court finds that Debtors could pay a substantial portion of their

---

6. In making this calculation, the Court accounted for the increased federal income tax liability that will result from Debtors' impending divorce.

unsecured debt with modest adjustments to their lifestyle.

### Whether Debtors made any payments toward the debt and the availability of relief through private negotiation

Debtors presented no evidence as to what payments they made toward the debt or whether they attempted to negotiate with their creditors or work out payment arrangements outside of bankruptcy.

### Accuracy of Debtors' Schedules

Debtors' schedules are riddled with inaccuracies. As the Court noted in footnote 2, Debtors' Schedule I indicates that Randall Brown's employer withholds approximately $629.00 monthly for insurance when it in fact withholds $286.00 monthly for insurance. Randall Brown also incorrectly listed his gross monthly income, his payroll deductions, and his United Way contribution on Debtors' Schedule I. Finally, on the day of the hearing Randall Brown filed an expense summary increasing his monthly living expenses by over $400.00 including, among other things, the addition of a $200.00 monthly vacation allowance. Debtors have not filed amended schedules to date.

### Good Faith

The Court is troubled by Randall Brown's purchase of a $30,000.00 Corvette shortly after he consulted his bankruptcy attorney and shortly before Debtors filed a bankruptcy petition. The Court's concern is two-fold. First, the Court is obviously concerned with the $30,000.00 purchase price (and high monthly payments). The Court is certain that there were less expensive alternatives. Secondly, the Court is troubled by Randall Brown's decision to purchase a car which requires costly maintenance and upkeep. The Court finds that the purchase evidences a lack of good faith and a cavalier attitude toward creditors.

### CONCLUSION

Because 1) Debtors are able to repay a significant portion of their unsecured debt through a Chapter 13 plan; 2) Debtors' bankruptcy filing was precipitated by chronically living beyond their means; 3) Debtors are relatively healthy and do not have any dependents or family responsibilities; 4) Debtors' statements of income and expenses are inaccurate; and 5) Debtors did not file their petition in good faith, the Court finds that enabling Debtors to obtain Chapter 7 relief would be a substantial abuse of Chapter 7 of the bankruptcy Code. Accordingly, the Court finds it appropriate to grant the Trustee's Motion to Dismiss. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.

### ORDER GRANTING UNITED STATES TRUSTEE'S MOTION TO DISMISS FOR SUBSTANTIAL ABUSE

This case came before the Court upon the United States Trustee's Motion to Dismiss for Substantial Abuse. The Court conducted a hearing on September 4, 2003. Upon Findings of Fact and Conclusions of Law separately entered, it is

**ORDERED:**

1. The United States Trustee's Motion to Dismiss for Substantial Abuse is granted.

2. The case will be dismissed unless Debtors convert to Chapter 13 on or before December 4, 2003.