**In re: Darrell D. HESTER, Debtor.**

**No. 3:04–BK–07255–GLP.**

United States Bankruptcy Court,
M.D. Florida.
Jacksonville Division.

April 18, 2005.

Gary D. Lemaster, Ocala, FL, for Debtor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court on the United States Trustee's Motion to Dismiss pursuant to 11 U.S.C. § 707(b) and Request to Clerk to Hold Discharge Pending Hearing. On November 9, 2004 and on January 13, 2005, the Court held evidentiary hearings, and at the conclusion, took the matter under advisement. The Court enters the following Findings of Facts and Conclusions of Law.

### FINDINGS OF FACT

1. Darrell D. Hester (the "Debtor") filed a petition under Chapter 7 of the United States Bankruptcy Code on July 15, 2004. A Meeting of Creditors was held pursuant to § 341 on August 31, 2004.

2. On September 10, 2004, the United States Trustee filed a Motion to Dismiss pursuant to § 707(b).

3. The Debtor is a Federal Corrections Officer and has served in that capacity for six (6) years. The Debtor stated that the reason he filed for bankruptcy protection was due in large part to a voluntary leave from work in order to pursue a professional football career, without compensation. Currently, the Debtor is employed and earns a regular income.

4. On Schedule B, the Debtor lists a total of $40,588.94 in personal property, which includes a retirement account, specifically a Thrift Savings Plan ("TSP"), from which the Debtor borrowed approximately $3,500. Additionally, the Debtor

lists one vehicle, a 2001 GMC Yukon, which has a monthly payment of $657.00.

5. On Schedule D, the Debtor lists two (2) secured creditors with claims totaling $45,309.61, which includes a vehicle loan with Ford Motor Credit in the amount of $19,000 and a second vehicle loan with Ford Motor Credit in the amount of $26,309.61. However, the Debtor testified that, prior to filing bankruptcy, he surrendered one of the vehicles listed on schedule D. On September 20, 2004, the Debtor amended Schedule D wherein he indicated that the balance owed to Ford Motor Credit on the surrendered vehicle is $4,484.00. After the amendment, the total amount of secured claims is $30,793.61.

6. On Schedule E, the Debtor lists a loan against his TSP retirement account in the amount of $3,500, which is paid by automatic deduction from the Debtor's paychecks. On September 8, 2004, the Debtor filed an amendment to Schedule E and added a student loan obligation to Citibank, N.A., in the amount of $31,275.17.

7. On Schedule F, the Debtor lists six (6) unsecured non-priority claims totaling $17,399.04. Among these claims is a debt owed to the Debtor's former spouse in the amount of $10,243.04. However, the United States Trustee introduced into evidence a copy of the Debtor's current credit re-

port, dated September 15, 2004, which lists the Debtor's unsecured debt as $51,534.00.

8. On Schedule I, the Debtor originally listed his gross monthly income as $4,035.00 and net monthly income as $3,165.35. On September 8, 2004, the Debtor filed an amendment to Schedule I adding an additional monthly income deduction of $13.50 for life insurance. On December 10, 2004, the Debtor again amended Schedule I wherein he reduced his net income from $3,165.36 to $2,752.10. Due to the multiple amendments of the Debtor's income, the United States Trustee submitted copies of the Debtor's earnings statements for an extended period of time in order to examine the Debtor's income. UST Exh. 14. Based upon calculations that the Debtor performed on the witness stand, the Debtor earns approximately $4,742.98 in gross income per month.[1] Based upon these calculations and on the Debtor's earnings statements, the Debtor's net monthly income is approximately $3,191.62.[2] Among the Debtor's wage deductions are payments on the Debtor's TSP loan and contributions to the Debtor's TSP retirement account, totaling approximately $206.48 per month.[3]

9. On Schedule J, the Debtor originally listed total monthly expenses of $2,498.00. On September 20, 2004, the Debtor amended his Schedule J to include two

---

1. The Debtor's earnings statements reflect $45,970.44 in year to date gross income, which, when divided by 21 (the amount of pay periods thus far for the year), then multiplied by 26 (the amount of pay periods per year) and then divided by 12 (the amount of months per year), results in gross monthly income of $4,742.98. UST Exh. 14.

2. The Debtor's earnings statements reflect $30,934.25 in year to date net income, which, when divided by 21 (the amount of pay periods thus far for the year), then multiplied by 26 (the amount of pay periods per year) and then divided by 12 (the amount of months per

year), results in net monthly income of $3,191.62. UST Exh. 14.

3. The Debtor's earnings statements reflect $2,001.40 in year to date income deductions for the Debtor's TSP loan repayment ($1,150.00) and TPS retirement contribution ($851.40). $2,001.40 divided by 21 (the amount of pay periods thus for the year), then multiplied by 26 (the amount of pay periods per year) and then divided by 12 (the number of months per year), results in $206.48 per month for the aforementioned wage deductions. UST Exh. 14.

expense items not previously listed: $415.00 payment per month to his former spouse and $125.00 payment per month to Citibank in repayment of his student loan debt. Additionally, the Debtor increased the monthly payments on his TSP loan to $122.00 from $100.00. On December 3, 2004, the Debtor filed another amendment to Schedule J, increasing his monthly expenses to $3,929.50, an increase of $791.50. Among the changes were amendments increasing the cost of the Debtor's food from $200.00 to $500.00, increasing the cost of the Debtor's heat and electricity from $80.00 to $210.00, and increasing the cost of the Debtor's transportation from $200.00 to $400.00. On December 10, 2004, the Debtor again amended Schedule J, decreasing his monthly expenses from $3,929.50 to $3,694.00, due to the fact the Debtor's health insurance, life insurance, and payments on the TSP loan are deducted from the his wages.

### CONCLUSIONS OF LAW

The United States Trustee seeks dismissal of the case (or conversion to a Chapter 13 bankruptcy) as a substantial abuse of the provisions of Chapter 7. The Trustee asserts that the Debtor has sufficient income to make a significant distribution to his unsecured creditors over a hypothetical thirty-six (36) month Chapter 13 plan. The Debtor contends that he does not have sufficient disposable income to fund a Chapter 13 plan.

■ Section 707(b) provides that a court may dismiss a Chapter 7 case filed by an individual debtor "whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter." 11 U.S.C. § 707(b). Section 707(b) further states that there is a presumption in favor of granting relief to the debtor; thus, the Trustee has the burden to show that the

Debtor's filing is a substantial abuse of the system. *Id.* As a preliminary matter, the Court must determine whether the Debtor's debts are primarily consumer debts.

"Consumer debt" is defined in 11 U.S.C. § 101(8) as a debt "incurred by an individual primarily for personal, family, or household purchases." The Debtor concedes that his debts are primarily consumer debts. Therefore, it is necessary for the Court to determine whether granting relief under Chapter 7 would constitute a substantial abuse.

■ The Bankruptcy Code does not define "substantial abuse," leaving interpretation to the court. A plurality of courts have interpreted § 707(b) to require dismissal of a case as substantial abuse when a debtor has sufficient disposable income to pay some or all of his or her debt from future income in a hypothetical Chapter 13 plan. This Court has applied this mode of analysis in determining whether there is substantial abuse under § 707(b). *See In re Dickerson*, 193 B.R. 67 (Bankr.M.D.Fla. 1996).

According to § 1325(b)(1)(B), a Chapter 13 plan must provide all of the debtor's disposable income to be received in the three year period beginning on the date that the first plan payment is due. 11 U.S.C. § 1325(b)(1)(B). "Disposable income" is defined as income received that is not reasonably necessary for maintenance or support of the debtor. 11 U.S.C. § 1325(b)(2)(A). In constructing a hypothetical Chapter 13 plan and determining the amount of the Debtor's disposable income, it is necessary to take the Debtor's income (listed in Schedule I) and subtract from it the Debtor's expenses (listed in Schedule J). If the Court determines that the Debtor, after subtracting his expenses from his income, has sufficient disposable income to make a meaningful distribution in a Chapter 13 plan, the Court will dis-

miss the case as substantial abuse. The United States Trustee argues that several items that the Debtor listed in Schedule I and J should be removed, thereby increasing the amount of the Debtor's disposable income and consequently enabling the Debtor to make a meaningful distribution in a Chapter 13 plan.

First, the United States Trustee contends that the Debtor's proposed student loan payment should be removed from Schedule J. On Schedule J, which lists the Debtor's expenses, the Debtor listed a $125.00 payment to Citibank in repayment of a student loan. A Chapter 13 plan that provides for a greater percentage payment on a student loan claim while providing for a lower percentage payment for other unsecured claims discriminates unfairly under § 1322(b)(1) and may not be confirmed. *In re Colley*, 260 B.R. 532, 541–42 (Bankr.M.D.Fla.2000). In *Colley*, the court based its holding on the plain language of § 1322(b)(1), which states that a debtor "may not discriminate unfairly against any class" of creditors. *Id.* In the present case, the Debtor's hypothetical Chapter 13 plan proposes to pay full contractual payments on the Debtor's student loans but provides for other unsecured claims to be paid in a lower pro rata amount. The Court finds that his designation discriminates unfairly under § 1322(b)(1). Consequently, the $125.00 proposed payment to Citibank listed in Schedule J should be disallowed.

Second, the United States Trustee argues that the Debtor's scheduled payment to his former wife should also be removed from Schedule J. On Schedule F, which lists the Debtor's unsecured non-priority claims, the Debtor listed $10,243.04 owed to his former wife pursuant to a divorce decree. *See* UST Exh. 9. The Debtor lists this debt as an expense on Schedule J and proposes to pay it in his hypothetical Chapter 13 plan. Some courts allow a debtor to discriminate in favor of family support obligations. *See In re Leser*, 939 F.2d 669, 672 (8th Cir.1991) (stating that Congress, based upon § 1322(b)(1), intended to elevate certain unsecured creditors, such as families, above other unsecured creditors). However, based upon the Debtor's schedules, the debt is an unsecured non-priority debt and it is not labeled in the divorce decree or on the Debtor's schedules as alimony. Therefore, the Court finds that the Debtor cannot provide for payment to his former wife pursuant to the divorce decree without unfairly discriminating against other unsecured creditors' claims. As a result, the Court removes from Schedule J the $415.00 proposed payment to the Debtor's former wife.

Third, the United States Trustee argues that specific wage deductions listed on the Debtor's Schedule I are disposable income. On Schedule I, which lists the Debtor's income and deductions, the Debtor listed wage deductions for repayments on his TSP loan as well as contributions to his retirement account, totaling approximately $206.48 per month.[4] This Court has previously ruled that such contributions/payments are not "reasonably necessary to be expended for the maintenance or support of the debtor." *See In re Padro*, 252 B.R. 809, 811–12 (Bankr.M.D.Fla.

4. The Debtor's earnings statements reflect $2,001.40 in year to date income deductions for the Debtor's TSP loan repayment ($1,150.00) and TPS retirement contribution ($851.40). $2,001.40 divided by 21 (the amount of pay periods thus far for the year), then multiplied by 26 (the amount of pay periods per year) and then divided by 12 (the number of months per year), results in $206.48 per month for the aforementioned wage deductions. UST Exh. 14.

2000); *see also In re Prout*, 273 B.R. 673, 674–75 (Bankr.M.D.Fla.2001). Therefore, the Court finds that the Debtor's deductions to his retirement account and repayments to his TSP loan should be treated as disposable income.

■ The United States Trustee also argues that certain expenses of the Debtor are excessive; specifically, the Trustee argues that the Debtor's food expense, which is $500.00 per month, is excessive. Additionally, the United States Trustee challenges the amount of the Debtor's traveling expense, which the Debtor listed as $400.00. It is necessary for the Court to determine whether these expenses are reasonably necessary for the maintenance or support of the debtor. This Court has previously found a food expense of $450.00 for a single debtor with no dependants to be excessive and consequently reduced such amount by $100.00. *See In re Williams*, 201 B.R. 579, 581 (Bankr. M.D.Fla.1996). In the present case, on December 3, 2004, subsequent to the United States Trustee's Motion to Dismiss, the Debtor amended his schedules increasing the cost of food from $200.00 to $500.00 and increasing the cost of transportation from $200.00 to $400.00. The Debtor did not state a reason for the substantial changes. Based upon prior case law and the unsubstantiated changes, the Court finds these expenses unreasonable. A more reasonable food expense is $400.00 (a reduction of $100.00 for the food expenditure). The Court finds that a more reasonable traveling expense would be $250.00 per month (a reduction of $150.00).

■ On Schedule J, the Debtor listed monthly expenses of $3,694.00. Based upon the foregoing discussion, $790.00 of expenses ($415.00 for the payment to the Debtor's former wife, $125.00 payment for student loans, a $150.00 reduction in the Debtor's traveling expense and $100.00 reduction of food expense) should be removed from the Debtor's Schedule J. Therefore, the Debtor's actual monthly expenses, for purposes of constructing a hypothetical Chapter 13 plan, are $2,904.00 ($3,694.00—$790.00). Based upon the evidence adduced at the hearing, the Debtor's net monthly income is $3,191.62. However, factoring in the disallowance of the Debtor's wage deductions for his TSP loan repayments and contributions to his retirement account (amounts totaling $206.48, *see supra* footnote 4), the Debtor's actual net monthly income is $3,398.10 (3,191.62 + $206.48). Taking the Debtor's net monthly income ($3,398.10) and subtracting from it the Debtor's monthly expenses ($2,904.00), the Debtor's monthly disposable income for purposes of constructing a hypothetical Chapter 13 plan is approximately $494.00. ($3,398.10—$2,904.00). The sole remaining issue is whether the Debtor's $494.00 of monthly disposable income would make a meaningful distribution in a hypothetical Chapter 13 plan such that granting relief to the Debtor in Chapter 7 would constitute substantial abuse.

The Court is reluctant to engraft a disposable income threshold for Chapter 7 eligibility because each case depends upon both the amount of debt owed and the amount of debt being paid. *See In re Degross*, 272 B.R. 309, 316 (Bankr. M.D.Fla.2001); see also *In re Brown*, 301 B.R. 607 (Bankr.M.D.Fla.2003) (finding substantial abuse where debtors' monthly income exceeded their reasonable monthly expenses giving debtors the ability to pay at least a 40% dividend to unsecured creditors in hypothetical 36–month Chapter 13 plan).

In the present case, if the Debtor contributed $494.00 of disposable income over the course of a thirty-six (36) month Chapter 13 plan, the distribution to the Debtor's unsecured creditors would be approximate-

ly $17,784.00. This payment would satisfy all of the Debtor's originally scheduled unsecured claims, which was reported as $17,399.04. Assuming all the Debtor's unsecured creditors file claims, totaling approximately $51,534.00, they would receive up to a 35% dividend in a thirty-six month plan. Therefore, the Court finds that the Debtor could make a meaningful distribution in a Chapter 13 plan.

Based upon the aforementioned, the Court finds it appropriate to grant the United States Trustee's Motion to Dismiss. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.